# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **PATRICK M. O'BRIEN,** | |
| **Plaintiff,** | No. 17 C 0272 |
| v. | Magistrate Judge Mary M. Rowland |
| **NANCY A. BERRYHILL,**[1] **Acting Commissioner of Social Security,** | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick O'Brien filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits, a claimant must establish that he or she is disabled within the meaning of the Act.[2] *York v. Massanari*, 155 F. Supp. 2d

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are set forth at 20 C.F.R. § 416.901 et seq.

973, 977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

The standard for determining DIB is virtually identical to that used for SSI. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff protectively applied for DIB and SSI on January 3, 2013, alleging he became disabled on August 14, 2012. (R. at 17). These claims were denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 17, 186–87). On August 14, 2015, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge (ALJ) Margaret Carey. (*Id.* at 39–109). The ALJ also heard testimony from Gary Wilhelm, a vocational expert (VE), and Richard O'Brien, Plaintiff's father. (*Id.*).

The ALJ denied Plaintiff's request for benefits on September 25, 2015. (R. at 17–28). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 14, 2012. (*Id.* at 19). At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia; traumatic brain injury; and mood disorder/affective disorder. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that he is limited to:

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

> frequent climbing of ladders, ropes, and scaffolds, ramps and stairs, stooping, kneeling crouching, and crawling; occasional overhead reaching; simple and routine tasks with occasional decision making and occasional changes in the work environment; no more than superficial interaction with the public; can be around coworkers on a daily basis, but is limited to no more than occasional interaction and thus cannot perform tandem tasks or tasks where one production step depends on another; and will be isolated with only occasional interaction with supervisors.

(R. at 21–22). The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. (*Id.* at 26). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including marker-retail and housekeeper. (*Id.* at 27). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date through the date of the ALJ's decision. (*Id.* at 28).

The Appeals Council denied Plaintiff's request for review on November 16, 2016. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it

4

"reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks

5

evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

Plaintiff contends that the ALJ's decision contains errors of law and is not supported by substantial evidence because the ALJ (1) improperly assessed Plaintiff's subjective symptoms and credibility; (2) improperly evaluated the medical opinion evidence; and (3) failed to account for all of Plaintiff's limitations in formulating his RFC. (Dkt. 16 at 6–22).

**A. The ALJ's Evaluation of Plaintiff's Subjective Symptom Statements**

Because an RFC assessment will often "depend heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms," the Court first addresses Plaintiff's argument that the ALJ improperly analyzed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Social Security Administration determined that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." Social Security Regulation (SSR)[4] 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel,* 201 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the court is "not invariably bound by an agency's policy statements, the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue,* 556 F.3d 736, 744 (7th Cir. 2009).

of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not

7

supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

In this case, the Court finds that the reasons provided by the ALJ for rejecting Plaintiff's subjective symptom statements are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

First, the ALJ failed to explain how Plaintiff's ability to complete limited daily activities undermines his allegations of pain or equates to an ability to perform full-time work. While it is permissible for an ALJ to consider a claimant's daily

8

activities when assessing a Plaintiff's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs are not to place "undue weight" on those activities. *Moss*, 555 F.3d at 562; *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place"). Further, when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, the ALJ stated that "the activities reported by the claimant (as set forth above) suggests a higher level of functioning than alleged by the claimant." (R. at 24). These activities include, *inter alia*: taking care of personal hygiene needs, preparing simple meals, using a computer, taking care of the cat, doing minor household chores, driving, and gardening. (*Id.* at 20). But absent from the ALJ's opinion is an explanation as to *how* Plaintiff's ability to perform these limited tasks undermines his complaints of debilitating pain. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *Ghiselli*, 837 F.3d at 778 (finding error when ALJ did not "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"). Likewise, these limited activities do not demonstrate that Plaintiff can perform full-time work. *See Bjornson*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more

9

flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ failed to consider the difference between a person being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week).

Significantly, the ALJ ignored Plaintiff's numerous qualifications when performing daily activities, and did not consider that many activities require assistance from a family member. For instance, in a May 2013 Function Report, Plaintiff reported that he could perform some household chores such as cleaning and laundry, but indicated that he is in pain when he performs these chores and that "it seems or takes forever." (R. at 314). He could pour food in a bowl for his cat, but required assistance with cleaning the litter box. (*Id.* at 313). Plaintiff testified that he had not been able to work in the garden for the past two years because it became too painful. (*Id.* at 79, 314). His father and sister do most of the housework. (*Id.* at 79, 86, 303–05, 314). Plaintiff is able to drive, but does so as little as possible due to pain. (*Id.* at 50–51). He frequently relies on his father to drive him to appointments. (*Id.* at 86). "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss*, 555 F.3d at 562. The ALJ did not discuss any of these qualifications in her analysis of Plaintiff's subjective allegations. While an ALJ need not discuss or give great weight to every piece of evidence in the

record, she "must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto*, 374 F.3d at 474.

Next, despite finding Plaintiff's fibromyalgia to be a severe impairment, the ALJ emphasized the lack of objective findings as a basis for discrediting Plaintiff's testimony. (R. at 22–23). The ALJ's reasoning reflects a lack of appreciation for the subjective nature of fibromyalgia. Because fibromyalgia "often produce[s] pain and other symptoms out of proportion to the 'objective' medical evidence, it is crucial that the disability adjudicator evaluate credibility with great care and a proper understanding of the disease[ ]." *Johnson v. Colvin*, No. 13 C 1023, 2014 WL 2765701, at *1 (E.D. Wis. June 18, 2014). Indeed, "[t]here are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Here, the ALJ did not explain how a finding of normal range of motion, normal gait, 5/5 motor strength, and a neurological examination within normal limits is inconsistent with the debilitating pain associated with fibromyalgia. There is no evidence indicating that fibromyalgia causes limitations in strength, range of motion, or an inability to walk. *See Sarchet*, 78 F.3d at 307 ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."). On the contrary, fibromyalgia is characterized by widespread pain, not by an inability to walk or a decrease in range of motion.[5]

---

[5] *See* <www.mayoclinic.org/diseases-conditions/fibromyalgia> (last visited October 10, 2017).

Also problematic is the ALJ's boilerplate statement that Plaintiff's testimony was "not entirely credible." (R. at 22). The Seventh Circuit has repeatedly stressed that finding a claimant's testimony "not entirely credible," as the ALJ did here, without any indication as to which statements are not credible and what exactly "not entirely" is meant to signify, tells the reviewing court little or nothing. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony."); *Chase v. Astrue*, 458 F. App'x 553, 558 (7th Cir. 2012) (holding that the ALJ's "fail[ure] to specify which statements are or are not credible . . . leaves us with no basis to review" the ALJ's credibility and RFC determinations); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) (the ALJ's finding that the claimant's testimony was "not entirely credible" provides "no explanation of which of [the claimant's] statements are not entirely credible or how credible or noncredible any of them are."). While an ALJ need not address every symptom allegation, she must provide sufficient details as to allow the Court to trace the path of her reasoning. *See Steele*, 290 F.3d at 942; *Scott*, 297 F.3d at 595. The ALJ's failure to do so here leaves the Court unable to discern which of Plaintiff's statements the ALJ credited and which she did not.

In sum, the ALJ failed to "build and accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. While the Court

12

does not hold that the ALJ should have accepted Plaintiff's allegations, the foundation underlying her assessment was inadequate. On remand, the ALJ shall reassess Plaintiff's subjective symptom statements with due regard for the full range of medical evidence, following the requirements of SSR 16-3p.

**B. The ALJ Did Not Properly Evaluate the Treating Physician's Opinion**

Plaintiff next contends that the ALJ improperly assessed the treating source opinion evidence. In particular, Plaintiff argues that the ALJ erred in failing to accord controlling weight to the opinions of his treating physician, Dr. Rodos. By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for

reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

Furthermore, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). In sum, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio*, 630 F.3d at 710 (citing 20 C.F.R. § 404.1527(d)(2)).

In March 2013, Dr. Rodos completed a Mental Disorders Report and a Fibromyalgia RFC Questionnaire. (R. at 25). On the Mental Disorders Report, Dr. Rodos indicated a diagnosis of Bipolar II Disorder. (*Id*. at 371). He opined that Plaintiff's illness restricted his daily activities, but had not impacted his ability to sustain concentration and attention to the extent that it resulted in frequent failure to complete tasks. (*Id*.). Dr. Rodos further opined that, as a result of the affective disorder, Plaintiff' had no restriction of activities of daily living, mild limitation in

14

maintaining social functioning, and moderate limitation in maintaining concentration, persistence, or pace. (*Id*. at 373). He indicated that Plaintiff would be absent from work approximately three times a month as a result of his illness, and that he would sometimes need to lie down at unpredictable intervals during a work shift. (*Id*. at 371, 378).

On the Fibromyalgia RFC Questionnaire, Dr. Rodos indicated that Plaintiff met the American Rheumatological Society's criteria for fibromyalgia, and noted that Plaintiff had the following signs and symptoms of fibromyalgia: multiple tender points, nonrestorative sleep, lack of endurance, and impaired concentration. (R. at 423). Dr. Rodos opined that emotional factors contributed to the severity of Plaintiff's symptoms and his functional limitations. (*Id*.). He indicated that Plaintiff's concentration and attention are often impacted by his fatigue and pain, and that Plaintiff was moderately limited in his ability to deal with work stress. (*Id*.). Plaintiff would be absent approximately three times a month. (*Id*. at 424). On both forms, Dr. Rodos concluded that Plaintiff did not retain the functional ability to work in a competitive environment, in even a sedentary occupation, on a full-time eight hours a day, five days a week basis. (*Id*. at 378).

The Court finds the ALJ improperly discounted the March 2013 medical opinions of Dr. Rodos.[6] It is undisputed that Dr. Rodos is Plaintiff's treating

---

[6] The ALJ also considered Dr. Rodos' September 2011 opinion that Plaintiff was unable to perform his job duties and was disabled until December 30, 2011, but gave the opinion "little weight" because the work restriction was only temporary and therefore was not a reflection of Plaintiff's long-term functioning. (R. at 482, 25). The Court finds no error in the ALJ's treatment of this opinion. *See Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) ("Because this assessment and the anticipated date of [Plaintiff's] return to work both

15

physician. The ALJ herself recognized that "Dr. Rodos had a treating relationship with [Plaintiff] and examined him on multiple occasions." (R. at 25). However, the ALJ gave insufficient reasons to discount Dr. Rodos' medical opinions as a treating physician.

The ALJ offered three reasons for giving Dr. Rodos' opinions "some weight." (R. at 25). First, the ALJ concluded that "the limitations assessed by Dr. Rodos are not entirely consistent with each other or the overall record." (R. at 25). The ALJ noted that, on the Mental Disorders Report, Dr. Rodos answered "yes" to the question of whether the illness restricts daily activities, but later indicated that Plaintiff's affective disorder did not result in a restriction of activities of daily living. (R. at 25, 371, 373). True, Dr. Rodos' answers to these two questions appear to be contradictory, and the ALJ was entitled to take this inconsistency account in assessing Dr. Rodos' opinions. *See Clifford*, 227 F.3d at 871 (internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion so long as the ALJ provides an adequate explanation). However, the Court is not prepared to conclude that such a minor inconsistency is fatal to the credibility of Dr. Rodos' other opinions or his ultimate conclusions regarding the nature and severity of Plaintiff's condition and his related functional limitations. *See Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). Furthermore, the ALJ's conclusory assertion that inconsistencies existed between Dr. Rodos' opinions and "the overall record" is insufficient. "If the ALJ concludes that the treating physician's opinion is

---

predated the alleged onset of [Plaintiff's] disability . . . we do not find the assessment particularly probative of [Plaintiff's] condition during the adjudicative period.").

16

inconsistent with other evidence, she must explain the inconsistency." *Frobes v. Barnhart*, 467 F. Supp. 2d 808, 8189 (N.D. Ill. 2006). The ALJ did not do so here.

The ALJ also determined that "the objective medical evidence in the record does not support all of the limitations assessed by Dr. Rodos," as physical and mental examinations "have generally not revealed significant functional limitations." (*Id.* at 25). The Court finds this rationale equally unpersuasive. First, the ALJ offers no explanation as to which of the limitations assessed are supported by the objective evidence and which limitations are unsupported. Moreover, "the ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott*, 647 F.3d at 740; *see also Punzio*, 630 F.3d at 710; *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). The fact that a few mental status examinations "have generally not revealed significant problems" is not clearly inconsistent with Dr. Rodos' opinions. Similarly, as explained above, fibromyalgia's symptoms are entirely subjective, and there are no laboratory tests for the presence or severity of fibromyalgia. *See Sarchet*, 78 F.3d at 306. Thus, the lack of significant physical abnormalities during examinations does not necessarily undermine Dr. Rodos' opinions.

Finally, the ALJ further discounted Dr. Rodos' opinions on the basis that Dr. Rodos did not provide an adequate explanation for why Plaintiff was unable to

17

work. (R. at 25). However, Dr. Rodos noted that Plaintiff suffered from pain, exacerbated by movement, overuse, and stress, and emotional factors, and that he also suffered from non-restorative sleep and fatigue. (*Id.* at 423). He noted that Plaintiff needed to lie down during the day, at unpredictable intervals. (*Id.* at 424). He also noted that Plaintiff's symptoms would cause him to miss work about three times each month. (*Id.* at 378, 424).

Even assuming that the ALJ provided "good reasons" for not affording Dr. Rodos' opinions controlling weight, she was still required to address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. SSR 96-2p. SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*). 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss*, 555 F.3d at 561. In this case, although the ALJ acknowledged that Dr. Rodos had a treating relationship with Plaintiff and had examined him on multiple occasions, it is not clear to the Court that the ALJ adequately considered several of the regulatory factors, including the nature and extent of the treatment relationship, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Rodos had a relevant specialty. The ALJ's failure to "sufficiently account [ ] for the factors in 20 C.F.R. § 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents the Court from assessing the reasonableness of the ALJ's decision. For these reasons, the ALJ did not offer substantial evidence for rejecting the opinions of Dr. Rodos, which is an error

18

requiring remand.

On remand, the ALJ shall reevaluate the weight to be afforded to the opinions of Dr. Rodos. If the ALJ finds "good reasons" for not giving the opinions controlling weight, *see Campbell*, 627 F.3d at 306, the ALJ shall explicitly "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," *Moss*, 555 F.3d at 561, in determining what weight to give the opinion.

## C. Other Issues

Because the Court is remanding to reevaluate Plaintiff's subjective symptom statements and the weight to be given to Dr. Rodos' opinion, the Court chooses not to address Plaintiff's other arguments at this time. However, on remand, after determining the weight to be given the treating physician's opinions, the ALJ shall then reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## D. Remedy

Plaintiff requests a reversal of the Commissioner's decision with an order to award benefits or, in the alternative, a reversal with a remand for further proceedings. When reviewing a denial of disability benefits, a court may "affirm,

reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The court may reverse with an instruction to award benefits only if "all factual issues have been resolved and the record can yield but one supportable conclusion." *Briscoe ex. re. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citation omitted). That is not the case here, and it is not the purview of this Court to gather or reweigh evidence. Therefore, remand for further proceedings is the appropriate remedy.

## V. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [16] is **GRANTED**. Defendant's Motion for Summary Judgement [17] is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this Opinion.

Dated: October 31, 2017   E N T E R:

*Mary M Rowland*

_____
MARY M. ROWLAND
United States Magistrate Judge